James **MOORE** et al., Plaintiffs,

v.

**LEFLORE COUNTY BOARD OF ELECTION COMMISSIONERS** et al., Defendants.

No. GC 71–84.

United States District Court,
N. D. Mississippi,
Greenville Division.

Oct. 18, 1971.

John C. Brittain, Jr., Jackson, Miss., Johnnie E. Walls, Jr., Greenwood, Miss., David M. Lipman, Oxford, Miss., for plaintiffs.

R. C. McBee, James W. Burgoon, Greenwood, Miss., for defendants.

Before COLEMAN, Circuit Judge, and KEADY and SMITH, District Judges.

KEADY, District Judge:

Plaintiffs, who are black voters of Leflore County, Mississippi, bring this suit in equity against the Board of Election Commissioners and Board of Supervisors of Leflore County, seeking declaratory and injunctive relief against defendants to prevent them from applying Miss.Code Ann. § 2870 as amended in 1966 so as to provide for election of supervisors from the county at large rather than by districts.[1] Claiming a violation of § 5 of the Voting Rights Act of 1965, plaintiffs invoke federal court jurisdiction under 28 U.S.C. §§ 1343(3) and (4), 2201 and 2202 and 42 U.S.C. § 1971(d); and a three-judge district court, constituted pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973c, has been duly convened to determine the issues.

The essential facts are stipulated, and at the hearing plaintiffs moved for judgment on the pleadings. In the November 1964 general election and all previous elections, supervisors of each of the five districts in Leflore County were elected on a district basis, whereby each supervisor was a resident of the district which he served and was elected by the voters of the district. At its September 1966 meeting the board adopted an order providing that all qualified electors of the county shall be eligible to vote for each member of the board of supervisors, but that each candidate shall be a resident of the district which he proposes to represent. This order, adopted pursuant to the aforementioned 1966 amendment, was duly published in the required manner and made final in January 1967. County supervisors were elected in primary and general elections held in 1967 by at-large elections for four-year terms of office beginning Jan-

---

1. § 2870 was amended by Chap. 290, Miss. Laws of 1966, which was approved May 27, 1966, and provided in part:

"The board of supervisors of any county may adopt an order providing that all the qualified electors of the county shall be eligible to vote for each member of the board of supervisors but each candidate shall be a resident of the district which he proposes to represent; said order to be adopted and published in a newspaper having general circulation in the county at least twelve (12) months prior to the next general election wherein said supervisors are elected."

Prior to the foregoing amendment, § 2870 provided for the election of supervisors only by districts.

uary 1, 1968. The incumbent supervisors are presently holding office pursuant to that election.

In July and September 1967, Ramsay Clark, Attorney General of the United States, directed letters to the County Election Commissioners, discussing their respective responsibilities under the Voting Rights Act of 1965. Later, federal observers were sent into the county to determine firsthand whether persons entitled to vote were allowed to do so and whether the votes were properly counted and tabulated. The at-large method of electing supervisors was a fact well known to the federal observers, who did not object to the procedure. The board, however, did not submit its order for the alternate method of at-large election of supervisors for approval to either the United States Attorney General or the United States District Court for the District of Columbia, as required by § 5 of the Voting Rights Act of 1965.[2] We know judicially that the United States Attorney General has refused to approve the 1966 and subsequent amendments to Miss.Code Ann. § 2870.

This year candidates for the post of supervisor in Leflore County ran on an at-large basis, and successful party nominees in the August 1971 primary as well as independent candidates will have their names placed on the ballot at the November 1971 general election to be voted upon by the county at large. No black person ran as a candidate in the August primary or has qualified as an independent candidate in the forthcoming general election.

According to the 1970 official census, 42,111 persons reside in Leflore County. Of this number 24,373 are black, 17,550 are white and 188 are of other races.

There is no data before the court showing by race the number of qualified electors in the county as a whole or in each of the supervisors' districts. There can be no doubt, however, that the county's population is seriously malapportioned among the five districts as follows:

| Beat No. 1 | 2,536 |
|---|---|
| 2 | 2,999 |
| 3 | 27,651 |
| 4 | 5,515 |
| 5 | 3,410 [3] |

The more populous Beat 3, which includes the City of Greenwood (22,400 according to 1970 census), has a population almost twice as great as the other four districts combined, thus diluting the voting strength of 65.6% of the county's population to not more than one-fifth representation on the board. A vote for supervisor in any of the other districts would have a value significantly greater than a vote in Beat 3. The votes in Beat 1 as presently constituted would have a value more than ten times greater than those in Beat 3; the votes in Beat 2 would have a value almost ten times greater; the votes in Beat 4 would have a value five times greater; and the votes in Beat 5 would have a value eight times greater.

We agree with plaintiffs' basic contention that the board's 1966 order providing for at-large elections amounts to a voting standard, practice, or procedure different from that in force on November 1, 1964, and hence ineffective and unenforceable until the requisite approval has been secured from either the Attorney General of the United States or the United States District Court for the District of Columbia as required by § 5 of the Voting Rights Act of 1965 as amended. This proposition was settled

2. 42 U.S.C. § 1973c as amended June 22, 1970, P.L. 91–285, 84 Stat. 315.

3. The 1960 census figures, although indicating that 5,000 more people then resided in the county, disclosed that the supervisors' districts were similarly malapportioned. In 1960 the county's population of 47,142 resided in districts as follows:

| Beat No. 1 | 4,267 |
|---|---|
| 2 | 5,497 |
| 3 | 26,160 |
| 4 | 6,085 |
| 5 | 5,133 |

by the Supreme Court in Allen v. Board of Electors, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), which held that § 5 approval had to be secured before the 1966 amendment to Miss.Code § 2870 could be implemented. In a majority opinion authored by Chief Justice Warren, the Court stated:

> No. 25[4] involves a change from district to at-large voting for county supervisors. The right to vote can be affected by a dilution of voting power as well as by an absolute prohibition on casting a ballot. See Reynolds v. Sims, 377 U.S. 533, 555 [84 S.Ct. 1362], 12 L.Ed.2d 506 [523] (1964). Voters who are members of a racial minority might well be in the majority in one district, but in a decided minority in the county as a whole. This type of change could therefore nullify their ability to elect the candidate of their choice just as would prohibiting some of them from voting. . . . We are of the opinion that . . . the balance of legislative history . . . indicates that § 5 applies to these cases [district to at-large voting]. 393 U.S. 569–571, 89 S.Ct. 833.

*Allen's* teaching has been applied in this district, Dyer v. Love, 307 F.Supp. 974 (N.D.Miss.1969), to preclude at-large election of county supervisors, upon the board's failure to obtain requisite federal approval. Absent such approval, the Leflore County Board of Supervisors "is disabled by federal law from using the post-1964 statutory scheme of at-large elections," Sheffield v. Itawamba County Board of Supervisors, 439 F.2d 35 (5 Cir. 1971), and the operation of the underlying statute, § 2870 as amended, and the board's order thereon, while not void, are in a state of suspended animation.

Defendants argue that the failure of the Attorney General of the United States to object to the at-large elections in 1967, when his office sent federal observers into Leflore County to observe the elections firsthand and they did not object to changed procedure, constitutes acquiescence tantamount to an implied § 5 approval. We reject this argument as untenable for two reasons: first, the reach of § 5 to an at-large election of county supervisors in Mississippi under § 2870 as amended was not clearly established until the *Allen* decision, which was handed down on March 3, 1969; second, § 5 requires an affirmative determination by the Attorney General on whether a covered change submitted to his office has the purpose or effect of denying or abridging the right to vote on account of race, and his mere failure to object does not satisfy the requirement of the Voting Rights Act. Evers v. Board of Election Commissioners, 327 F.Supp. 640 (3-judge court, S.D.Miss.1971).

We thus hold that the board's order constitutes a change in the voting standard, practice or procedure for electing supervisors requiring § 5 approval and under the admitted facts the change has not been subjected to the required federal scrutiny and approval by either the United States Attorney General or the Washington, D. C. federal district court. By the authority of Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L. Ed.2d 476 (1971), the function of the three-judge court convened under 42 U. S.C. § 1973c is limited to the foregoing dual determination. Necessarily, we are required to declare that the board's order adopted in September 1966 providing for at-large election of supervisors is without effect and will remain suspended until § 5 of the Voting Rights Act has been complied with by defendants.

In the exercise of pendent jurisdiction, we proceed to consider the question of appropriate and equitable relief under the circumstances. Plaintiffs urge us to

---

4. No. 25 was Fairley v. Patterson, a Mississippi case consolidated on appeal and argued with *Allen*. Mississippi has been determined covered by the act. 30 Fed. Reg. 9897 (August 6, 1965).

enjoin the scheduled 1971 at-large election of supervisors and direct that said election and all thereafter be by districts. Counsel for plaintiffs specifically assert that for the 1971 elections we order that the supervisors be elected from the districts as they are presently constituted. This argument wholly ignores that the districts as presently constituted are seriously malapportioned and violate the one man, one vote rule guaranteed by the Fourteenth Amendment. Indeed, the population disparaties between the present districts under the cases of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Avery v. Midland, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Martinolich v. Dean, 256 F.Supp. 612 (S.D.Miss. 1966), and recent decisions in this district, violate constitutional rights to so gross an extent that Leflore County is presently without any lawful means of electing its supervisors either by districts or by county at large.

█ Under these peculiar conditions, the equities of the situation must be considered. Without doubt, the qualified electors of Leflore County have the right to elect supervisors as the governing officials of the county, and this court may properly interfere with that right only to the extent required by federal constitutional imperatives. Neither plaintiffs nor any other persons in the county have at any time filed a request with the board asking that the malapportioned districts be redistricted in accordance with the pre-1964 provisions of § 2870. Nor was any suit filed challenging the validity of the at-large elections until August 5, 1971, which was two days after the holding of the first party primary in which candidates from all districts had offered on the at-large basis and were voted upon. The time for qualifying as independent candidates for the 1971 general elections has expired. As previously stated, no black candidate for supervisor will appear on the ballot either as a party nominee or an independent candidate. Black citizens constitute the majority of the county's population, and plaintiffs have made no factual showing whatever that the interest of black votes will actually be prejudiced by the holding of the November 1971 elections on an at-large basis. Any such suggestion, or possibility, may surely not override the clearly apparent injury to the one man, one vote rule by election of supervisors by malapportioned districts. Therefore, all equitable considerations compel us to reject plaintiffs' plea that the 1971 general election of supervisors be conducted on a district-wide basis. Instead, we authorize and allow the general election to proceed as scheduled for the at-large election of county supervisors subject to stated conditions.

Because of constitutional deficiencies arising from the malapportioned districts as presently constituted, the board must formulate and submit to the court a plan for redistricting the supervisors' districts of Leflore County which will bring population disparities in the districts to within constitutionally acceptable ratios. There are persons and firms within the State of Mississippi who are skilled in the development of redistricting plans, and their services may be availed of by the board in order to produce an acceptable plan. Since it is proper that both the incoming and incumbent supervisors have an opportunity to participate in the submission of the plan, the court will direct that it be filed not later than April 1, 1972. Written objections to the board's proposed plan, or alternate plan or plans, may be submitted by plaintiffs or other interested citizens not later than May 1, 1972. The court shall then expeditiously proceed to hear, determine and pass upon the merits of such plan or plans. If no meritorious plan is presented, the district court, upon the basis of the best available information shall devise a re-

districting plan for the county which satisfies the one man, one vote constitutional requirement. We reserve for decision at that time the issue of whether, under Sheffield v. Itawamba County Board of Supervisors, supra, this court, sitting as a court of equity and in the exercise of its discretion, should order the election of new supervisors on an at-large basis or by districts as redistricted in accordance with the approved plan.

■ Upon the approval of a legally sufficient plan, and in no event later than November 7, 1972, a new and final election shall be held in accordance with state law in the five supervisors' districts for the selection of a board of supervisors in compliance with the one man, one vote mandate of the United States Constitution. On the basis of recent Fifth Circuit cases, Hall v. Issaquena County Board of Supervisors, No. 71–2312, Slip Opinion July 29, 1971, and Howard v. Adams County Board of Supervisors, No. 71–2361, Slip Opinion July 29, 1971, supervisors to be elected at large in November 1971 from the presently malapportioned districts shall not serve for the regular four-year term of office but only provisionally, and for the period of time needed to arrange for the new election and until their successors shall have been legally chosen and qualified. Those supervisors elected pursuant to the order of this court approving the new redistricting plan shall assume and hold the offices to which they are elected within thirty days after such election.

Plaintiffs' prayer for taxable costs upon the preliminary hearing is granted; the matter of counsel fees is reserved for final hearing.

The court shall retain jurisdiction to hear and determine the remaining issues.

Let an order be entered accordingly.